IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| FELICIA KELSO <br> 305 Aqua Lynn Drive <br> Fort Washington, MD 20744 <br><br> Plaintiff, <br><br> v. <br><br> ROBERT WILKIE, Secretary, <br> U.S. Department of Veterans Affairs <br> 810 Vermont Avenue NW <br> Washington, DC 20420 <br><br> Defendant. | Civil Action No. <br><br> Jury Trial Demanded |

# COMPLAINT

Felicia Kelso ("Plaintiff"), by and through his undersigned counsel, complains of the Department of Veterans Affairs ("Defendant" or "Agency") as follows:

## PARTIES

1. Plaintiff is a resident of Fort Washington, Maryland.

2. On information and belief, Robert Wilkie, Secretary for the Department of Veterans Affairs, is named in his official capacity as the Defendant that formerly employed Plaintiff.

## JURISDICTION AND VENUE

3. This Court has federal question jurisdiction under 28 U.S.C. § 1331 and pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* ("Title VII").

4. Venue is proper in this judicial district because Defendant is located here and because the unlawful employment practices giving rise to this action were committed and occurred in this District.

5. Plaintiff has exhausted her administrative remedies by timely filing this lawsuit within 90-

days December 21, 2018, the date Plaintiff received the Office of Federal Operations of the U.S. Equal Employment Opportunity Commission ("EEOC") decision dated December 18, 2018.

## STATEMENT OF FACTS

*Background Information.*

6. Plaintiff identifies as a black female of Caribbean descent.

7. On or about March 30, 2010, Thomas Briggs, Assistant Director, interviewed Plaintiff for an Administrative Specialist position, GS-0301-9/11 and Milan Srskic, former Director for Programs Project Management Services, offered Plaintiff the position.

8. On or about April 7, 2010, Carolyn Gill, Human Resources Specialist, called Plaintiff and offered her the position of Program Support Assistant, GS-7.

9. Plaintiff declined Ms. Gill's offer for the GS-7 position and explained that Mr. Srskic had offered her a different GS-9/11 position.

10. On April 8, 2010, Carolyn Gill, Human Resources Specialist, emailed Plaintiff and stated that she was unable to complete the processing for the GS-9 position Plaintiff had interviewed for as intended.

11. Ms. Gill proposed that Plaintiff accept an offer of employment for the GS-9 position at a GS-7 level and explained to Plaintiff, "I want you to accept this at the 7 and trust me, we can work on elevating it once you are on board."

12. On or about April 16, 2010, Defendant sent Plaintiff a letter confirming her appointment, effective April 25, 2010, as a Program Support Assistant (Office Automation), GS-0303-07/01.

13. Plaintiff accepted Defendant's offer of employment with the understanding that the position would be corrected from a GS-7 position to the GS-9 position for which she had interviewed.

14. From April 26, 2010 until early 2011, Mr. Srskic was Plaintiff's first-line supervisor.

15. From Plaintiff's initial hire date until approximately December 2011, Plaintiff was the only black, Caribbean-American female employee who worked in the office.

16. The other employees were all white, Caucasian males.

*Defendant approved Plaintiff's promotion.*

17. On or about May 27, 2010, William Levay (white/Caucasian, male), Program Manager, emailed Ms. Gill with Mr. Srskic, Thomas Briggs, and Robert Frazier cc'd, regarding Plaintiff's job position duties and advised that everyone concurred that the goal "is a GS-09 with promotion potential of GS-11," and once Plaintiff's current position is "upgraded and filled," a GS-07 would be hired to support that position.

18. On or about July 1, 2010, Celeste Lucas, Management Analyst, Resource Management Office, called Plaintiff and asked her to meet with her in order to begin the paperwork for the promotion.

19. Ms. Lucas advised Plaintiff that she had already coordinated processing the promotion with the requisite individuals within management and personnel.

20. On or about July 16, 2010, Ms. Lucas emailed Plaintiff that she had sent the hard copy for classification on July 1, 2010 for the Administrative Specialist position, GS-301-9/11.

21. Ms. Gill told Plaintiff that it would take approximately two weeks to process the paperwork.

22. On or about July 28, 2010, Plaintiff was advised that the paperwork was being processed for her promotion to a GS-9/11.

*Plaintiff objects to male colleague's hostile accusations and her position is changed.*

23. On or about September 9, 2010, Plaintiff's coworker Mr. Levay confronted her in a hostile manner and accused her of treating his office (Silver Spring Regional Office) differently than the other two Regional Offices.

24. Plaintiff denied that she had done so but Mr. Levay was visibly angry, and he continued accusing Plaintiff in a threatening manner.

25. Plaintiff attempted to de-escalate the incident and reminded Mr. Levay that he was not her supervisor.

26. Mr. Levay became more angry and yelled "Sergeant" mockingly at Plaintiff in reference to her prior military service.

27. The next day on or about September 10, 2010, Mr. Levay approached Plaintiff again and threatened that he was going to make sure Plaintiff was "blackballed" within the organization if she refused to listen to him, even though Mr. Levay was not Plaintiff's supervisor.

28. Plaintiff perceived that Mr. Levay's level of hostility and threatening demeanor directed towards her was based on her race, sex, and national origin because he did not treat the other white males outside her protected classes this way.

29. Shortly after Plaintiff refused to allow Mr. Levay yell and threaten her, the GS-9/11 position description was altered to a GS-9 position with no promotion potential on October 19, 2010.

30. The change was inconsistent with the forms Mr. Srskic signed off on with promotion potential to a GS-11.

*Plaintiff contacts EEO and Defendant removes her job duties.*

31. In or around early 2011, Dennis Milsten (white/Caucasian male) replaced Mr. Srskic as Plaintiff's first-line supervisor.

32. On or about February 7, 2012, during Plaintiff's mid-year meeting with Mr. Milsten, he advised Plaintiff that she would not be promoted to a GS-11 because she had reached full performance at GS-9.

33. Shortly thereafter, Plaintiff initiated contact with EEO and completed her interview on February 7, 2012.

34. Per EEO informal complaint processing, the EEO counselor contacted Plaintiff's management and advised them of her protected activity and allegations.

35. On or about February 7, 2012, Mr. Milsten removed Plaintiff's executive correspondence and supply function job duties.

36. Mr. Milsten reassigned the executive correspondence job duties from Plaintiff to Carla Carter, Staff Assistant, GS-11, who had just transferred to Plaintiff's office in December 2011.

37. Mr. Milsten reassigned the supply function job duties from Plaintiff to Janelle Massey, GS-7.

*Plaintiff's supervisors and coworkers subject her to ongoing harassment and ostracize her.*

38. Due to being disrespected and marginalized by Plaintiff's supervisors and colleagues, Plaintiff became ostracized by the rest of the staff.

39. Mr. Milsten told Plaintiff that he knew that she was being isolated by the staff and asked her if he was the cause of it.

40. Plaintiff regularly kept music on at her desk at a low level inaudible to her coworkers.

41. On February 24, 2010, instead of merely asking Plaintiff to turn off her music, Ann Marie Almaguer, a Student Trainee, entered Plaintiff's desk area and turned off her music while Plaintiff was momentarily in the restroom.

42. Plaintiff reported the incident to Mr. Milsten and he sent out an email that reminded staff to respect other's space.

43. On February 27, 2012, during a meeting with Mr. Milsten to discuss Plaintiff's work issues and her job performance, he raised his voice and spoke to Plaintiff in a condescending tone regarding her position description and performance plan.

44. Plaintiff emailed Mr. Milsten after the meeting and asked about his statements that she would be credited for her accomplishments during the rating period October 1-September 30, 2010 and pointed out several items that were missing.

45. Mr. Milsten emailed Plaintiff with a summary of the meeting and indicated that Plaintiff asked him where to go from here and that he did not know.

46. On March 14, 2012, Plaintiff emailed staff regarding a work issue and shortly after, Mr. Levay approached Plaintiff's desk in an intimidating manner and spoke down to her like she was incompetent because Plaintiff had sent the email to everyone and not just her office.

47. On March 14, 2012, Hulen Davis, Program Manager, approached Plaintiff and asked to meet with her in the conference room where Mr. Davis interrogated Plaintiff with unwarranted questions that falsely implied Plaintiff was "unstable."

48. Mr. Davis's offensive accusations were based on his "dream" that he had where Plaintiff came to work and shot and killed people in the office.

49. Mr. Davis shared his "dream" with Mr. Levay who was the Acting Supervisor at that time.

50. Plaintiff was humiliated by Mr. Davis's questions reported this incident to Mr. Milsten.

51. Mr. Davis's comments and Mr. Milsten's failure to rectify the ongoing harassment further isolated Plaintiff and the staff continued to ignore her and talk negatively about her.

*Defendant's failure to respond or conduct Plaintiff's request for a desk audit.*

52. On December 23, 2011, Plaintiff requested a desk audit from Mr. Milsten because she was performing the duties of a GS-11.

53. Plaintiff also emailed Marge H. Pearce and requested a desk audit.

54. On January 31, 2012, Plaintiff again requested a desk audit from Mr. Milsten.

55. Mr. Milsten told the EEO counselor that on March 20, 2012 he requested a desk audit to "upgrade [Plaintiff's] position," however, no desk audit was ever conducted.

*Staff continues mocking Plaintiff at work.*

56. On April 19, 2012, Ms. Carter emailed Raydene Ware and Shavonne Rush with derogatory comments about Plaintiff that alleged Plaintiff "did not lift a finger" and Ms. Carter "…should've had [Plaintiff] ironing. LOL."

57. Ms. Carter's emails were representative of the overall staff's perception of Plaintiff after Mr. Milsten removed her job duties and management isolated and ignored her.

58. On April 26, 2012, Ms. Carter continued to make derogatory comments about Plaintiff to her colleagues and told Samuel Robinson that Plaintiff would not be here long and Ms. Carter was tired of doing Plaintiff's job for her.

59. Plaintiff reported Ms. Carter's comments to Mr. Milsten but nothing was done in response.

*Defendant refuses Plaintiff's request for a union representative.*

60. On May 2, 2012, Plaintiff met with Mr. Milsten regarding her performance appraisal and he requested that she sign it even though she disagreed with it.

61. Plaintiff was uncomfortable and stopped talking during the meeting because she did not have union representation.

62. Mr. Milsten was counseled for his actions.

*Defendant refuses to acknowledge Plaintiff's concerns until her EEO mediation.*

63. On or about May 4, 2012, Plaintiff had already filed an EEO complaint but she continued to raise her issues with Mr. Milsten regarding her performance appraisal and performance plan.

64. Mr. Milsten told Plaintiff that her performance issues would be addressed in her EEO mediation which she perceived as threatening and retaliatory.

65. Management and staff actions towards Plaintiff made interactions impossible and she was unable to perform her job duties.

66. Management treated Plaintiff's similarly-situated coworkers outside her protected classes more favorably and did not subject them to the same hostility and harassment.

## COUNT 1

67. Plaintiff repeats and realleges the allegations set forth in the above paragraphs.

68. By and through its conduct, Defendant subjected Plaintiff to unlawful discrimination based on her sex, race and national origin in violation of Title VII of the Civil Rights Act of 1964.

69. Plaintiff has sustained damages consisting of emotional distress, pain and suffering, lost wages, and her losses are continuing.

## COUNT 2

70. Plaintiff repeats and realleges the allegations set forth in the above paragraphs.

71. By and through its conduct, Defendant subjected Plaintiff to an unlawful hostile work environment based on her sex, race and national origin in violation of Title VII of the Civil Rights Act of 1964.

72. Plaintiff has sustained damages consisting of emotional distress, pain and suffering, lost wages, and her losses are continuing.

## COUNT 3

73. Plaintiff repeats and realleges the allegations set forth in the above paragraphs.

74. By and through their conduct, Defendant subjected Plaintiff to unlawful retaliation in violation of Title VII of the Civil Rights Act of 1964.

75. Defendant acted with malice or reckless indifference to Plaintiff's rights.

76. As a result, Plaintiff has suffered damages, including but not limited to lost wages and benefits, emotional distress, and pain and suffering; and seeks punitive damages.

## COUNT 4

77. Plaintiff repeats and realleges the allegations set forth in the above paragraphs.

78. By and through their conduct, Defendant subjected Plaintiff to unlawful retaliatory hostile work environment in violation of Title VII of the Civil Rights Act of 1964.

79. Defendant acted with malice or reckless indifference to Plaintiff's rights.

80. As a result, Plaintiff has suffered damages, including but not limited to lost wages and benefits, emotional distress, and pain and suffering; and seeks punitive damages.

## JURY DEMAND

Plaintiff demands a trial by jury on all counts contained in the Complaint.

WHEREFORE, Plaintiff respectfully requests this Court enter judgment against the Defendant on all Counts and award Plaintiff lost wages and benefits, compensatory damages in the amount of $300,000, or in an amount to be determined at trial, for pain and suffering and emotional distress, pre- and post-judgment interest, costs, attorneys' fees, punitive damages, and any such other relief as is just and proper.

Date:   March 20, 2019

RESPECTFULLY SUBMITTED,

Alan Lescht & Associates, P.C.

By: /s/_____
Rani Rolston [Bar # 974052]
ALAN LESCHT & ASSOCIATES, P.C.
1825 K Street, N.W., Suite 750
Washington, D.C. 20006
Tel: (202) 463-6036
Fax: (202) 463-6067
rani.rolston@leschtlaw.com
*Attorney for Plaintiff*